Lorna Luckie and Gilbert Luckie,

c/o 5063 Pebblebrook Way,
Coconut Creek, Florida
Near; [33073-9998]
Non Domestic without the US

FILED BY ___ D.C.
2014 OCT -6 PM 12:51
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.-FTL

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Lorna Hope Luckie and Gilbert Luckie**

**Plaintiff(s),**

**CIVIL ACTION FILE**

14cv62294-Dimitrouleas/Snow

VS

**GMAC MORTGAGE CORPORATION d/b/a ditech.com, et al, GMAC MORTGAGE, LLC, et al MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., (MERS), et al GREEN TREE SERVICING, LLC, f/k/a WALTER INVESTMENT MANAGEMENT (Walter) et al, f/k/a GREEN TREE FINANCIAL SERVICING, et al Elizabeth R. Wellborn, d/b/a ELIZABETH R. WELLBORN, P.A., et al THE BANK OF NEW YORK MELLON AS SUCCESSOR BY MERGERTO THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, AS TRUSTEE FOR THE HOLDERS OF THE HOME EQUITY MORTGAGE TRUST, HOME EQUITY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-5; National Association, as Indenture Trustee, on Behalf of the Holders of HOME EQUITY MORTGAGE TRUST 2004-5Asset- PASS-THROUGH CERTIFICATES, Series 2004-5, et al BANYAN TRAILS PROPERTY OWNERS ASSOCIATION, INC., A/K/A BANYAN TRAILS., dba PROPERTY OWNERS ASSOCIATION (POA)**

**"JOHN DOE*" 1-20, "JANE DOE*" 1-20**

**These being fictitious names as the true and actual identities are not known by Petitioner(s)at this time.**

**Respondent(s)**

**COMPLAINT TO VACATE AND SET ASIDE UN-LAWFUL FORECLOSURE AND NEGLEGNECE, VIOLATION OF FCCPA, FDCPA, FDUTPA, RICO ACT, QUIET TITLE AND DECLARATORY/INJUNCTIVE RELIEF**

## I
## PRELIMINARY STATEMENT

This action is brought by Petitioner(s) Lorna Luckie and Gilbert Luckie, alleged Borrowers who holds a fee simple deed to property located at 5063 Pebblebrook Way, Coconut Creek, Florida 33073 against the alleged GMAC MORTGAGE LLC and TREEN TREE SERVICING LLC., that allegedly held and serviced a mortgage on the residential property and Mortgage Electronic Registration Systems (MERS), who is acting on behalf of alleged Lender (GMAC MORTGAGE CORPORATION d/b/a ditech.com) solely as nominee and Lenders assign.

This is an action for damages brought for damages for violations of the Real Estate Settlement Practices Act (RESPA) 12 U.S.C. §2605 et seq.; for damages for violations of the Truth in Lending Act (TILA) 15 U.S.C. §1641 et seq.; for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692

et seq. Violations of FCCPA, Violation of Unfair and Deceptive Practice, Negligent Misrepresentation Wrongful Foreclosure; and for declaratory and injunctive relief.

## II

## STANDARD OF REVIEW FOR PRO SE PLEADINGS

Petitioner admits to some technical missteps attributable to the learning curve. However, none of which is fatal to her claim as will be demonstrated below. The Petitioner is proceeding without the benefit of legal counsel. Additionally, she is not a practicing attorney nor has she been trained in the complex study of law. As such, Petitioner's pro se papers are to be construed liberally. See Haines v. Kerner, 404 U.S. 519-20, (1972). "A pro se litigant should be given a reasonable opportunity to remedy defects in her pleadings if the factual allegations are close to stating a claim for relief." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly such pleadings should be held to a less stringent standard than those drafted by licensed, practicing attorneys.

## III
## JURISDICTION

Jurisdiction and venue of this Court over this matter is invoked pursuant to the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and pursuant to supplemental jurisdiction, 28 U.S.C. § 1367. Venue is proper in this

judicial district pursuant to 28 U.S.C. § 1391 (c). Petitioners' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1331, 1332, 1343 and 1357, the amount in controversy exceeds $945,000.00, exclusive of interest and costs. Jurisdiction and venue of this Court over this matter is invoked pursuant to the 28 U.S.C. § 1331, 1332, 1343 and 1357. The amount in controversy exceeds $945,000.00, exclusive of interest and costs.

## IV
## PARTIES

**1).** Plaintiff, Lorna Luckie and Gilbert Luckie, is the Owners of the property located at 5063 Pebblebrook Way, Coconut Creek, Florida 33073.

**2).** Respondent(s) GMAC MORTGAGE CORPORATION d/b/a ditech.com d//b/a GMAC MORTGAGE, LLC is, organized and existed under the laws of COMMON -WEALTH of Pennsylvania with a place of business address of 3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626 and at all times herein mentioned a limited liability company, organized and doing business in Broward County, under the laws of the State of Florida and may be served with a copy of this Complaint and Summons upon its registered agent c/o Corporation Services Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

**3).** Respondent(s) GREEN TREE SERVICING, LLC, f/k/a CONSECO FINANCE SERVICING CORPORATION, f/k/a GREEN TREE FINANCIAL SERVICING, Respondent(s), Green Tree Servicing, LLC ("Green Tree"), is a wholly owned subsidiary of the publicly traded company Walter Investment Management Corp. (NYSE: WAC). Walter Investment Management ("Walter") et al is based in Tampa, Florida. Respondent(s) is based in St. Paul, Minnesota. Respondent(s) operates twenty -nine offices for its debt recovery operations, and at all times herein mentioned was, an Servicing Company/debt collector as those terms are defined in FDCPA, 15 U.S.C. § 1692e, §§ 1692d, 1692f, 12 U.S.C. § 2605(i) (2). Florida Consumer Collection Practices Act., and UCC 3-501 Organized and existed under the laws of the State of Delaware, doing business in Broward County, Florida and may be served with a copy of this Complaint and Summons upon its registered agent c/o CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324

**4).** Respondent(s) Elizabeth R. Wellborn, d/b/a ELIZABETH R. WELLBORN, P.A., et al, is, and at all times herein mentioned was, an alleged Law Firm/debt collector as those terms are defined in FDCPA, 15 U.S.C. § 2605(i) (2)., FCCPA., organized and existed under the laws of the State of Florida, doing business in Broward County, Florida and may be served with a copy of this Complaint and

Summons upon its place of business 350 Jim Moran Blvd, Suite 100, Deerfield Beach, FL 33442

**5).** Respondent(s) THE BANK OF NEW YORK MELLON AS SUCCESSOR BY MERGER TO THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, AS TRUSTEE FOR THE HOLDERS OF THE HOME EQUITY MORTGAGE TRUST, HOME EQUITY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-5; National Association, as Indenture Trustee, on Behalf of the Holders of HOME EQUITY MORTGAGE TRUST 2004-5Asset- PASS-THROUGH CERTIFICATES, Series 2004-5, is, and at all times herein mentioned was, a business entity of unknown form, doing business in Broward County, Florida, and may be served with a copy of this Complaint and Summons upon its place of business c/o ASHLEIGH L. PRICE, ESQUIRE, RONALD R. WOLFE & ASSOCIATES, P.L., 4919 Memorial Hwy Ste. 200, Tampa, FL 33634-7500. Respondent(s) is a debt collector as those terms are defined in FDCPA, 15 U.S.C. § 1692e, §§ 1692d, 1692f, 12 U.S.C. § 2605(i) (2).and FCCPA.

**6).** Respondent(s) BANYAN TRAILS PROPERTY OWNERS ASSOCIATION, INC., A/K/A BANYAN TRAILS., dba PROPERTY OWNERS ASSOCIATION (POA) is a Florida corporation with its principal place of business in Broward County, Florida, and may be served with a copy of this Complaint and

Summons upon its place of business c/o M&M PROPERTY MANAGEMENT, LLC, 1412 South Powerline Road, Pompano Beach, FL 33069.

**7).** Respondent(s), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Petitioner(s)is informed and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of New York, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of BROWARD, State of FLORIDA. Petitioner(s)is further informed and believes, and thereon alleges, that Respondent(s) MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this Complaint.

**8).** "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Petitioner(s)' Title, Or Any Cloud On Petitioner(s)' Title Thereto" are sued herein pursuant to Florida Code of Civil Procedure Chapter 49.071(1)(b).

**9).** Petitioner(s) do not know the true names and capacities of the Respondent(s) sued herein as DOES 1 through 20 ("DOE Respondent(s)"), inclusive, and therefore sues said DOE Respondent(s) by fictitious names.

Petitioner(s) are informed and believe and based on such information and belief aver that each of the DOE Respondent(s) is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Petitioner(s) will amend this Complaint to set forth the true names and capacities of each DOE Respondent(s) when same are ascertained.

**10).** Petitioner(s) are informed and believe and based on such information and belief aver that Respondent(s) GMAC/GREEN TREE, BNYM, POA, MERS, WELLBORN and DOE Respondent(s) 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. GMAC, BNYM, POA, MERS, WELLBORN and DOE Respondent(s) 1 through 20, inclusive, are hereinafter collectively referred to as the "Foreclosing Respondent(s)."

**11).** Each of the Respondent(s) named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Respondent(s), and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

**V**

## GENERAL ALLEGATIONS

**12).** Prior to May 9, 2003, Petitioner(s) purchased certain real property commonly known as (the "Subject Property").

**13.** Petitioner(s) alleges that all Respondent(s) intentionally acted in concert and

in furtherance of the conspiracy to defraud Petitioner(s)of their property when they knew that they lacked the legal right to do so as evidenced below:

**a).** Creating the Affidavit of Indebtedness in support of GMAC's Motion for Summary Judgment filed in the January 2013 case that was purportedly executed by a "Sherrell Feagins "Authorized Officer...GMAC MORTGAGE, LLC" on October 23, 2006. Notably, the affidavit proclaimed that GMAC was the owner and holder of the promissory note and mortgage. The affidavit claimed indebtedness of $211,412.23.

**b).** It is believed and alleged that the above acts violate Florida Statutes §817.54. Obtaining of mortgage, mortgage note, promissory note, etc., by false representation; §831.06 entitled "Fictitious signature of officer of corporation" and § 831.02. Uttering forged instruments.

**14).** Respondent(s) were at all time's material hereto agent and/or apparent / ostensible agent of the other.

**15).** Each Respondent(s) is engaged in some aspect of the mortgage industry and has, together, operated in concert as the facts relate to this case. Specifically, they operate, and operated, mortgage originating and mortgage servicing businesses that solicit, cater, and service millions of home loans annually, including debt collecting on alleged defaulted mortgages. Based on an understanding and belief, certain Respondent(s) and their agents, officers, affiliates, attorneys, and/or employees have operated as a common enterprise and in concert while engaging in the unlawful acts and practices alleged below, including collection of alleged defaulted debts.

**16).** According to the assignments of mortgage recorded in the Broward County Official Records neither GMAC nor GREEN TREE had the legal right to attempt to collect the alleged defaulted debt at the inception of the 2013 case because neither possessed an AOM and/or a Promissory Note indorsed in blank prior to filing and neither pled facts in support of any equitable transfer theory to support their standing in each case. In addition, it appears that each obtained the allegedly defaulted mortgage debt after 2013 cases were filed and therefore are considered "debt collectors". Any assertion to the contrary requires strict and convincing proof to the contrary.

**17).** A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

**18).** In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Petitioner(s) Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

**a.** There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

**b.** The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Petitioner(s) alleges that the Trust cannot demonstrate that it had perfected its security interest in Petitioner(s) Home

that is the subject of this action. Therefore, if the Respondent(s), and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

**19).** Petitioner(s) is informed and believes, and thereon alleges, that pursuant to the terms of the Pooling and Servicing Agreement (PSA), the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Petitioner(s) herein and all other mortgage loans identified in the PSA.

**20).** Based upon the foregoing, Petitioner(s) is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage which renders invalid any security interest in the Petitioner(s) mortgage, including, but not limited to:

**a.** The splitting or separation of title, ownership and interest in Petitioner(s)

Note and Mortgage of which the original lender is the holder, owner and beneficiary of Petitioner(s) Mortgage;

**b.** When the loan was sold to each intervening entity, there were no Assignments of the Mortgage to or from any intervening entity at the time of the foreclosure. Therefore, "True Sales" could not and did not occur;

**c.** The failure to assign and transfer the beneficial interest in Petitioner(s) Mortgage to GMAC MORTGAGE LLC, by GREEN TREE SERVICING LLC, of the Respondent(s);

**d.** The failure to indorse, assign and transfer Petitioner(s) Note and/or mortgage to Respondent(s) GMAC MORTGAGE LLC, by GREEN TREE SERVICING LLC, its Attorney-in-fact;

**e.** No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under FLORIDA law, which is conclusive proof that no true sales occurred as required; and

**21).** Further, Elizabeth R. Wellborn, P.A. is in the business of collecting allegedly delinquent debt mortgage loans in Florida. Their attorney-members and

employees are under an ethical duty of candor before the court and under a duty not to file frivolous claims. In executing that duty, they are obligated to review all evidence presented by their clients to determine the merit of the case before filing foreclosure lawsuits.

**22).** On or about May 9, 2003, Petitioner(s) executed a promissory note in favor of GMAC MORTGAGE CORPORATION d/b/a ditech.com. The note was secured by a mortgage with Luckie's as Borrowers/ Mortgagor and MERS as Lender and Lenders assignee /Mortgagee.

> **MORTGAGE; an estate created by a conveyance absolute in its form, but intended to secure the performance of some act, such as the payment of money, and the like, by the grantor or some other person, and to become void if the act is performed agreeably to the terms prescribe at the time of making such conveyance. 1 Washb.Real Prop. *475.**

**23).** Federal National Mortgage Association is the owner of the note. Petitioner(s) is the servicer of the loan and is not the holder of the note. No evidence of Federal National Mortgage Association authorizing Respondent(s) to bring action against Petitioner(s)'.

**24).** The Plaintiff(s), LORNA LUCKIE and GILBERT LUCKIE, own(s) the subject property.

**25).** On or about 5/09/2003, there was executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing the payment of the Note. The Mortgage was recorded on 7130/2003 in Book 35704 at Page 638 of the Public

Records of Broward County, Florida and mortgaged the property described in the mortgage then owned by and in possession of the mortgagors. Subsequent thereto, a loan modification was executed. Copies of the original note, mortgage and modification are attached hereto and incorporated herein as Composite Exhibit "D"

**26).** At no time did Petitioner(s) DEFAULTED ON NOTE. See "EXHIBIT A" paragraph 3 of note…if , on June 1, 2033, I still owe amount under this note , I will pay those amounts in full that date, which is called the "maturity Date"* it was paid EFT

**27).** The endorsement of the note by D. Harkness Limited signing officer for GMAC MORTGAGE CORPORATION DBA ditech.com is evidence of breach of instrument and voids all agreements. See Exhibit "A" endorse Note

**VI**
NATURE OF THE ACTION

**28).** This is an action to enjoin Respondent(s) from conducting and enforcing an illegal writ of possession with respect to property located at 5063 Pebblebrook Way, Coconut Creek, Broward County, Florida against Petitioner(s) and to set aside the illegal foreclosure sale and for damages based upon wrongful foreclosure sale and eviction with respect to property located at 5063 Pebblebrook Way, Coconut Creek, Florida 33073. Said property is located within this State

District. Petitioner(s) further seeks an emergency restraining order, a preliminary injunction, legal research fees, and other necessary and proper relief.

## VII
## FIRST CAUSE OF ACTION FOR
## ON THE FACTS IN THIS CASE, THE PROMISSORY NOTE – AND NOT THE MORTGAGE – PROVIDES THE EVIDENCE OF THE DEBT AND THE RIGHT TO FORECLOSE.

Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 28, inclusive, as though fully set forth herein.

**29).** The assignment of the mortgage is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the MERS did not have standing or the legal authority to assign the mortgage which purportedly secured the Note, and which served as the basis for a claim to have the right to conduct a foreclosure. Thus, the assignment of the mortgage was at all times void. SEE EXHIBIT "A" mortgage

**30).** Petitioner(s) are therefore entitled to an order that the Assignment of the mortgage is void ab initio and cancelling such Assignment.

**31).** Every mortgage loan is composed of two documents – the note instrument and the mortgage instrument. No matter how much the mortgage instrument is acclaimed as the basis of the agreement, the note instrument is the

essence of the debt. Sobel v. Mutual Dev. Inc., 313 So. 2d 77 (Fla. 1 DCA, 1975); Pepe v. Shepherd, 422 So. 2d 910 (Fla. 3 DCA 1982); Margiewicz v. Terco Prop., 441 So. 2d 1124 (Fla. 3 DCA 1983). The promissory note is evidence of the primary mortgage obligation. The mortgage is only a mere incident to the note. Brown v. Snell, 6 Fla. 741 (1856); Tayton v. American Nat'l Bank, 57 So. 678 (Fla. 1912); Scott v. Taylor, 58 So. 30 (Fla. 1912); Young v. Victory, 150 So. 624 (Fla. 1933); Thomas v. Hartman, 553 So. 2d 1256 (Fla. 5 DCA 1989). The mortgage instrument is only the security for the indebtedness. Grier v. M.H.C. Realty Co, 274 So. 2d 21 (Fla. 4 DCA 1973); Mellor v. Goldberg, 658 So. 2d 1162 (Fla. 2 DCA 1995); Century Group Inc. v. Premier Fin. Services East L. P., 724 So. 2d 661 (Fla. 2 DCA 1999)

**32).** In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000); In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009)(At page 12))(Exhibit E)

**33).** In this case, the Respondent(s) claim that it holds the mortgage by way of an assignment. (Complaint, para. 3; Note – no assignment of mortgage has been provided to counsel or filed in this action). However, in this case, the ownership of the promissory note and the mortgage instrument were bifurcated. The Note was made payable to the lender who is a specifically identified person - Citizens Trust Mortgage Corp. – and the mortgage instrument named MERS as the mortgagee, solely as a nominee. Neither the promissory note nor the mortgage instrument granted MERS an interest in the promissory note; instead, Citizens Trust Mortgage Corp. retained ownership in the promissory note. SEE EXHIBIT "B" promissory note.

**34).** the right to foreclose is dependent upon there being an enforceable promissory note. An assignment of mortgage from MERS to anyone else granted that other person(s) all of the interests that MERS had in the promissory note and the mortgage instrument and none of the interests that Citizens Trust Mortgage Corp. had in the Note. By the assignment of mortgage, MERS could not convey a greater interest to another person than that which it already held. Since MERS had no enforceable interest in the promissory note, it conveyed no enforceable interest in the promissory note to another person. Even if MERS was an agent of Citizens Trust Mortgage Corp. with authority to enforce the promissory note, no evidence of such authority has been presented to the Court.

**35).** In LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp. 2006), the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage. In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009), the Court stated "In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under state law to act for the note's holder." (At page 9) The Court found that MERS has no ownership interest in the promissory note. The Court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, it in fact is not a beneficiary. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talks like a duck, and quack like a duck, then it's not a duck." (At page 7) MERS Terms and Conditions say this:

> **MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights Specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.**

**In the case of In re Vargas, 396 B.R. 511, 520 (Bankr.C.D.Cal., 2008) , the Court stated:**

> **MERS is not in the business of holding promissory notes. (fn 10: MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.)**

**36).** In the case of In re Sheridan, Case No. 08-20381-TLM (Bankr.Idaho, 2009) MERS moved for relief from the stay. The Court stated that MERS "Counsel conceded that MERS is not an economic "beneficiary" under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid." The Court stated "Further, the Deed of Trust's designation of MERS as "beneficiary" is coupled with an explanation that "MERS is . . . acting solely as nominee for Lender and Lender's successors and assigns." The Court stated "Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative."

**37).** In Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the facts in that case and other non-binding court cases and concluded that MERS is

only a digital mortgage tracking service. (At page 168) The Court recited that MERS never held the promissory note, did not own the mortgage instrument (though the documents identified it as "mortgagee"), that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan.

**38).** Christopher L. Peterson, Associate Professor of Law, University of Florida, testified at a hearing before the U.S. Senate Committee on Banking, Housing, and Urban Affairs Subcommittee on Securities, Insurance, and Investment and stated:

> **MERS is merely a document custodian. . . . The system itself electronically tracks ownership and servicing rights of mortgages. . . . The parties obtain two principal benefits from attempting to use MERS as a "mortgagee of record in nominee capacity." First, under state secured credit laws, when a mortgage is assigned, the assignee must record the assignment with the county recording office, or risk losing priority vis-à-vis other creditors, buyers, or lienors. Most counties charge a fee to record the assignment, and use these fees to cover the cost of maintaining the real property records. Some counties also use recording fees to fund their court systems, legal aid organizations, or schools. In this respect, MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool. By paying MERS a fee, the parties to a securitization lower their operating costs. The second advantage MERS offers its customers comes later when homeowners fall behind on their monthly payments. In addition to its document custodial role,and its tax evasive role, MERS also frequently attempts to bring home foreclosure proceedings in its own name. This eliminates the need for the trust—which actually owns the loan—to foreclose in its own name, or to reassign the loan to a servicer or the originator to bring the foreclosure.**

**39).** R.K. Arnold, Senior Vice President, General Counsel and Secretary of Mortgage Electronic Registration Systems, Inc., stated:

> **MERS® will act as mortgagee of record for any mortgage loan registered on the computer system MERS® maintains, called the MERS® System. It will then track servicing rights and beneficial ownership interests in those loans and provide a platform for mortgage servicing rights to be traded electronically among its members without the need to record a mortgage assignment in the public land records each time. . . . Members pay annual fees to belong and transaction fees to execute electronic transactions on the MERS® System. . . . A mortgage note holder can sell a mortgage note to another in what has become a gigantic secondary market. . . . For these servicing companies to perform their duties satisfactorily, the note and mortgage were bifurcated. The investor or its designee held the note and named the servicing company as mortgagee, a structure that became standard. . . . When a mortgage loan is registered on the MERS® System, it receives a mortgage identification number (MIN). The borrower executes a**

---

**1. Subprime Mortgage Market Turmoil: Examining the Role of Securitization, http://banking.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=4f40e1b9-ec5b-4752-ba8f-0c14afc44884. (At page 6 -8)**

> **traditional paper mortgage naming the lender as mortgagee, and the lender executes an assignment of the mortgage to MERS®. Both documents are executed according to state law and recorded in the public land records, making MERS® the mortgagee of record. From that point on, no additional mortgage assignments will be recorded because MERS® will remain the mortgagee of record throughout the life of the loan. . . . MERS® keeps track of the new servicer electronically and acts as nominee for the servicing companies and investors. Because MERS® remains the mortgagee of record in the public land records throughout the life of a loan; it eliminates the need to record later assignments in the public land records. Usually, legal title to the property is not affected again until the loan is paid and the mortgage is released.**
>
> **(R.K. Arnold, Yes, There is Life on MERS, Prob. & Prop., Aug. 1997, at p.16; http://www.abanet.org/genpractice/magazine/1998/spring-bos/arnold.html)**

**40).** Courts around this country are clearly recognizing that MERS is not an owner of the promissory note and that it is also only a mortgagee in name alone and has no beneficial interest in the mortgage instrument. Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009); Mortgage Electronic Registration System,

Inc. v. Southwest Homes of Arkansas, 08-1299 (Ark. 3/19/2009) (Ark., 2009) MERS own website says as much. Therefore, any claimed assignment of mortgage from MERS to anyone else and then leading up to the Petitioner(s)could not transfer an interest in the promissory note; it could not even transfer an enforceable interest in the mortgage instrument and certainly is not a basis for foreclosure.

## VIII
## SECOND CAUSE OF ACTION
## TO SET ASIDE FORECLOSURE SALE
## (AGAINST THE FORECLOSING RESPONDENT(S)

**41).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 40, inclusive, as though fully set forth herein.

**42).** The Respondent(s) never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and mortgage, because the Respondent(s)' interest was never acknowledged and recorded, resulting in the foreclosure sale being void ab initio.

**43).** Moreover, the Respondent(s) never had the legal authority to foreclose because the instrument (mortgage), which permitted foreclosure if the borrower was in default, is void as it was improperly assigned and/or transferred to the Respondent(s) from the original lender. Therefore, the mortgage could not provide a basis for a foreclosure, and the foreclosure is void ab initio.

and, if the Respondent(s) allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

**48).** Petitioner(s) further allege on information and belief that the loan was sold or transferred without notifying the Petitioner(s) in writing. Therefore, the loan is void of legal rights to enforce it.

**49).** Additionally, The Respondent(s) violated which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, a foreclosure notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" including attempt "with due diligence to contact the borrower as required."

**50).** None of the Respondent(s) contacted Petitioner(s) to discuss their financial situation. Moreover, none of the Respondent(s) explored options with Petitioner(s) to avoid foreclosure. Additionally, none of the Respondent(s) informed Petitioner(s) of the right to have a meeting within 14 days of said contact. Accordingly, the Respondent(s) did not fulfill their legal obligation to Petitioner(s).

**51).** Thus, the Respondent(s) engaged in a fraudulent foreclosure of the Subject Property in that the Respondent(s) did not have the legal authority to

foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply.

**52).** As a result of the above alleged wrongs, Petitioner(s) have suffered general and special damages in an amount to be determined at trial.

**X**
**FOURTH CAUSE OF ACTION FOR**
**BREACH OF CONTRACT**
**(AGAINST THE FORECLOSING RESPONDENT(S)**

**53).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 52, inclusive, as though fully set forth herein.

**54).** Petitioner(s)' original loan agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed.

**55).** Alternatively, if the original note and mortgage were properly assigned to Respondent(s), Respondent(s) breached the note and mortgage that Petitioner(s) signed in May 2003. The terms of the note required payments made by Petitioner(s) to be applied properly to the note.

**56).** The Respondent(s) breached the note and mortgage by failing to apply the payments made by Petitioner(s) in May 2012 under 12 USC 95a Sec 1&2 to Petitioner(s)' loan, the result of which led to the Respondent(s) eventually

**44).** Accordingly, Petitioner(s) hereby request an order of this Court that the foreclosure Sale was irregular in that it was legally void and conducted without any right or privilege by the Respondent(s).

## IX
## THIRD CAUSE OF ACTION
## WRONGFUL FORECLOSURE
## (AGAINST THE FORECLOSING RESPONDENT(S)

**45).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 44, inclusive, as though fully set forth herein.

**46).** Petitioner(s) are informed and believe and thereon allege that after the origination and funding of their loan, it was sold to investors as a "mortgage backed security" and that none of the Respondent(s) in this action owned this loan, or the corresponding note. Moreover, none of the Respondent(s) in this action were lawfully appointed as assignee or had the original note assigned to them. Accordingly, none of the Respondent(s) in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Petitioner(s)' interest in the Subject Property. The Respondent(s) were not the note holder or a beneficiary at any time with regard to Petitioner(s) alleged loan.

**47).** Petitioner(s) further allege on information and belief that none of the Respondent(s) in this action are beneficiaries or representatives of the beneficiary

foreclosing on the Subject Property. See Exhibit "C" EFT-Payment Instrument" and supporting documents

**57).** As a proximate result of Respondent(s) breaches, Petitioner(s) have suffered compensatory damages in an amount to be proven at trial.

**XI**
**FIFTH CAUSE OF ACTION FOR NEGLIGENCE**
**(AGAINST THE FORECLOSING RESPONDENT(S)**

**58).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 57, inclusive, as though fully set forth herein.

**59).** At all times relevant herein, the Respondent(s), acting as Petitioner(s), lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Petitioner(s).

**60).** In taking the actions alleged above, and in failing to take the actions as alleged above, the Respondent(s) breached their duty of care and skill to Petitioner(s) in the servicing of Petitioner(s) loan by, among other things, failing to properly and accurately credit payments made by Petitioner(s) toward the loan,

preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

**61).** As a direct and proximate result of the negligence and carelessness of the Respondent(s) as set forth above, Petitioner(s) suffered general and special damages in an amount to be determined at trial.

## XII
## SIXTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST THE FORECLOSING RESPONDENT(S)

**62).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 61, inclusive, as though fully set forth herein.

**63).** Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

**64).** Alternatively, if the note and mortgage was validly and properly assigned to the Respondent(s), the Respondent(s) did not act in good faith and did not deal fairly with Petitioner(s) in connection with the note and mortgage when they refused to properly apply the May 2012 payments to their loan and thereafter foreclosed on the Subject Property even though Petitioner(s) provided full payments with interest for the allegedly skipped months and thereafter refused to resolve the mistake with Petitioner(s) in an equitable fashion.

**65).** The Respondent(s) enjoyed substantial discretionary power affecting the rights of Petitioner(s) during the events alleged in this Complaint. They were required to exercise such power in good faith Perusing to FL Stat § 671.201 (20)

**66).** The Respondent(s) engaged in such conduct to drive Petitioner(s) into foreclosure so that they could acquire the Subject Property with its large equity at a bargain basement price. These actions were a bad faith breach of the contract between Petitioner(s) and the Respondent(s) which show that they had no intention of performing the contract, consisting of the original note and mortgage, in good faith.

**67).** MERS willfully breached their implied covenant of good faith and fair dealing with Petitioner(s)when MERS allowed their alleged agent to execute the

Assignment of the mortgage in order to appoint a new assignee to begin foreclosure on the Subject Property.

**68).** As a result of the Respondent(s) breaches of this covenant, Petitioner(s) have suffered general and special damages in an amount to be determined at trial.

## XIII
## SEVENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT (AGAINST THE FORECLOSING RESPONDENT(S)

**69).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 68, inclusive, as though fully set forth herein.

**70).** By their wrongful acts and omissions, the Respondent(s) with unclean hands have been unjustly enriched at the expense of Petitioner(s), and thus Petitioner(s) have been unjustly deprived and injured.

**71).** By reason of the foregoing, Petitioner(s) seek restitution from the Respondent(s), and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Respondent(s) from their wrongful conduct.

## XIV
## EIGHTH CAUSE OF ACTION FOR VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT, (FDUTPA) (AGAINST THE FORECLOSING RESPONDENT(S)

**In 1973 Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (F.S. §501.201 et seq.) was enacted to give consumers stronger legal protection against commercial wrongdoing .1 It is patterned after the Federal Trade Commission Act (FTC act) (15 U.S.C. §§45 et seq.), which provides a right of action only to the FTC .2 Like its federal counterpart, Florida's "little FTC act" prohibited unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce .3 FDUTPA further provided that in construing those provisions, due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to the FTC act .4 It enables consumers to recover actual damages, permits recovery of reasonable attorneys' fees and costs by the prevailing party, and also provides for declaratory judgments and injunctive relief .5 It gives many additional equitable remedies to state enforcement authorities, who may bring suit "on behalf of one or more consumers." 6**

**72).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 71, inclusive, as though fully set forth herein.

**73).** Violations of Florida Statutes, Chapter 501, Part II, may have been committed which will entitle the borrower to significant damages from the lender., which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of FDUTPA.

**74).** The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for "[u]nconsciable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT § 501.20491 (2005).

**75).** This is an action for injunctive and declaratory relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, et seq. (hereinafter "the Act") and Chapter 86, FLA.STAT.

**76).** The provisions of the Act are to be liberally construed to promote the following policies:

**a.** To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices; and

**b.** To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. FLA. STAT, §501.202(1) and (2).

**77.** At all times relevant hereto, Luckie's was a "consumer" as defined by FLA. STAT. §501.203 (7).

**78).** At all times relevant hereto, these Respondent(s) were engaged in "trade or commerce" as defined by FLA. STAT. §501.203 (8)

**79).** Either, any, or all of the Respondent(s) in this count created the documents purportedly transferring the subject mortgage from GMAC MORTGAGE CORPORATION d/b/a ditech.com simultaneously with a transfer to GMAC on May 9, 2003 and then a transfer to GREEN TREE on February 7, 2014 and the final AOM from GREEN TREE as "Attorney in Fact" for GMAC on February 7, 2014.

**80).** These Respondent(s) violated the Act by engaging in unfair and deceptive acts and practices including, but not limited to: Sherrell Feagins executing a verified fact in Respondent(s) complaint who has no firsthand knowledge claiming to be an authorized signer, manufacturing documents to create the illusion that GMAC possessed equitable ownership of the subject mortgage despite a complete lack of evidence to support that contention.

**81).** These Respondent(s) knew, or should have known, the Affidavit of Indebtedness, along with other documents "created" to give the illusion that the 2013 foreclosure Petitioner(s) possessed equitable ownership of the subject promissory note and mortgage was unauthorized, invalid and illegal. The document creation was performed on GMAC behalf and with each's acceptance and approval when in fact neither was the real party in interest at the time the claims were filed.

**82).** These Respondent(s) have violated the act by engaging the following acts of unconscionable conduct, or unfair/deceptive practices in the conduct of trade or commerce. Respondent(s), claimed and continue to claim BNYM as successor to GMAC/GREEN TREE is the owner and holder of the subject note and mortgage even though they knew this status was based upon falsified documents created and executed to give the illusion that GMAC/GREEN TREE and then BNYM owned the subject note and mortgage when in fact the true owner of the beneficial interest was and is GMAC MORTGAGE CORPORATION DBA ditech.com.

**83).** These Respondent(s)' conduct alleged above, notably collection of a debt without the legal ownership of that debt was a deceptive practice, prohibited by the mortgage contract, State and Federal law and thus unconscionable. In light of such misconduct, the prosecution of this case also amounts to a deceptive practice. Despite this fatal defect, Respondent(s) filed and /or prosecuted and/or participated in the malicious foreclosure action against plaintiff.

**84).** As a direct result of these Respondent(s) actions, Petitioner(s)has been damaged because she is in danger of losing her homestead, the equity she has established in her home and has had her credit slandered by the wrongful foreclosure and deceptive practices employed to achieve same.

**85).** Petitioner(s) has been harmed by Respondent(s)' deception and unconscionable conduct. Such acts, the wrongful attempts to collect the note, and the filing of a baseless foreclosure complaint constitute a deceptive business practice and are unconscionable as per se violations of a variety of consumer protection laws enacted to prevent the very conduct engaged in by the Respondent(s) in this case. Each and every Respondent(s) is jointly and severally liable for such conduct.

**86).** Petitioner(s)' Luckie's incurred substantial damages as a direct and proximate result of Petitioner(s)' illegal conduct including harm to her credit, loss of her homestead real property and associated equity, pain and suffering caused by the utter lies perpetuated upon her including the Plaintiff's fees and costs associated with each case. Fees and costs are sought pursuant to Fla. Stat. §501.2105.

**87).** Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., violated the provision of FDUTPA, regarding their legal standing to conduct foreclosure sale on Petitioner(s) property, when in fact it had no such legal standing.

**88).** Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., violated the provisions of FDUTPA, regarding their position to proceed with illegal

dispossessory and writ of possession based upon Respondent(s) GMAC MORTGAGE, LLC/ GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., legal standing to conduct foreclosure sale of Petitioner(s) property.

**89).** Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A., violated the provisions of FDUTPA, by willfully, maliciously and intentionally conspiring to deny Petitioner(s)due process and acting under the color of law to deprive Petitioner(s)of real estate.

**90).** As more fully described above, the Respondent(s) acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

**91).** Specifically, the Respondent(s) engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and mortgage, foreclosure of residential properties and related matters by;

**(a)** Assessing improper or excessive late fees;

**(b)** Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

**(c)** Instituting improper or premature foreclosure proceedings to

generate unwarranted fees;

**(d)** Misapplying or failing to apply customer payments;

**(e)** Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

**(f)** Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or Florida law, or that are in excess of amounts legally due;

**(g)** Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

**(h)** Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or Florida law;

**(i)** Failing to disclose the fees, costs and charges allowable under the mortgage contract;

**(j)** Ignoring grace periods;

**(k)** Executing and recording false and misleading documents; and

**(l)** Acting as beneficiaries and assignees without the legal authority to do so.

**92).** The Respondent(s) fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

**93).** Moreover, the Respondent(s) engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against Florida consumers, and premature default often resulting in unfair and illegal foreclosure proceedings. The scheme implemented by the Respondent(s) is designed to defraud Florida consumers and enrich the Foreclosing Respondent(s).

**94).** The foregoing acts and practices have caused substantial harm to Florida consumers.

**95).** As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Respondent(s), Petitioner(s) and Florida consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

**96).** By reason of the foregoing, the Respondent(s) have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Petitioner(s) and other Florida consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Florida Deceptive and Unfair Trade Practice Act. Additionally, Petitioner(s) are therefore entitled to

injunctive relief and fees as available under Florida Deceptive and Unfair Trade Practice Act, Florida Statutes, Chapter 501.201.

**XV**
**NINTH CAUSE OF ACTION FOR**
**QUIET TITLE**
**(AS TO RESPONDENT(S) GMAC/GREEN TREE, BNYM, POA, MERS, WELLBORN; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PETITIONER(S)' TITLE, OR ANY CLOUD ON PETITIONER(S)' TITLE THERETO; AND DOES 1 THROUGH 20)**

**97).** Petitioner(s) incorporate herein by reference the allegations made in paragraphs 1 through 96, inclusive, as though fully set forth herein.

**98).** Petitioner(s) are the equitable owners of the Subject Property which has the following legal description:

LOT 62, PARCEL 5: A PORTION OF PARCEL "A" OF "BANYAN TRAILS", ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 154, AT PAGE 3, OF THE PUBLIC RECORDS OF BRO WARD COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST WESTERLY NORTHWEST CORNER OF PARCEL "A", SAID PLAT OF BANYAN TRAILS; THENCE SOUTH 00°50'22" EAST, ALONG THE WESTERLY LINE OF SAID PARCEL "A", A DISTANCE OF 1,080.25 FEET; THENCE NORTH 87°58'06" EAST, A DISTANCE OF 250.04 FEET TO THE POINT OF BEGINNING; THENCE NORTH 54°12'27" WEST, A DISTANCE OF 161.97 FEET; THENCE NORTH 0005022" WEST, A DISTANCE OF 27.96 FEET; THENCE NORTH 83°33'26" EAST, A DISTANCE OF 96.33 FEET; THENCE NORTH 89°16'04" EAST, A DISTANCE OF 7.56 FEET; THENCE SOUTH 24°16'15" EAST, A DISTANCE OF 124.71 FEET TO THE POINT OF CURVE OF A NON TANGENT CURVE TO THE LEFT, OF WHICH THE RADIUS POINT LIES SOUTH 24°16'15" EAST, HAVING A RADIUS OF 52.00 FEET AND A CENTRAL ANGLE OF 33°47'36";

**99).** Petitioner(s) seek to quiet title against the claims of Respondent(s) GMAC/GREEN TREE, BNYM, POA, MERS, WELLBORN; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PETITIONER(S) TITLE, OR ANY CLOUD ON PETITIONER(S) TITLE THERETO; and DOES 1 through 10 (collectively referred to herein as the "Title Respondent(s)") as the Title Respondent(s) hold themselves out as entitled to fee simple ownership of the Subject Property by and through their purchase of the property at the foreclosure sale to be held on or about October 8th , 2014. In fact, the Title Respondent(s) had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including the right to foreclosure, offering the Subject Property for sale at a foreclosure sale, demanding possession or filing cases for writ of possession. Nevertheless, the Title Respondent(s) are proceeding with a foreclosure sale, through ASHLEIGH L. PRICE, ESQUIRE, RONALD R. WOLFE & ASSOCIARES, P.L., as alleged representative, illegally and with unclean hands. Petitioner(s) are willing to tender the amount received subject to equitable adjustment for the damage caused to the Petitioner(s) by the Title Respondent(s)' activities.

**100).** In May 09, 2003, Petitioner(s) executed the mortgage which listed MERS acting solely as a nominee for Lender and Lender's successors and assign.

MERS IS THE mortgagee under the security instrument. Later, MERS assign mortgage to GMAC mortgage, LLC. and GMAC mortgage LLC., proceed with foreclosed on the Subject Property. At the time that GMAC assigned the mortgage February 7,2014 foreclosure proceeding was active for one year, GREEN TREE had not been substituted as the attorney in fact in place of GMAC. As the assignment of mortgage must be implemented, either original or substituted, and the beneficiary, either original or substituted, must comply with Florida Statue, the Respondent(s) failed to follow the statutory rules for a valid foreclosure under the Florida Civil Code and it is, therefore, void.

**101).** Additionally, the foreclosure must vacated and sale is void because the requirements were not complied with by any of the Foreclosing Respondent(s).

**102).** Petitioner(s) seek to quiet title, judicial declaration that the title to the Subject Property is vested in Petitioner(s) alone and that the Title Respondent(s) and each of them be declared to have no interest, estate right, title or interest in the subject property and that the Title Respondent(s), their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Petitioner(s) rights.

## XVI
## TENTH CAUSE OF ACTION FOR
## UN-LAWFUL FORECLOSURE AND WRIT OF POSSESSION

**103).** The averments of paragraph 1-102 above are re-averred and incorporated herein by reference.

**104).** Petitioner(s) avers that Respondent(s) THE BANK OF NEW YORK MELLON AS SUCCESSOR BY MERGER TO THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, AS TRUSTEE FOR THE HOLDERS OF THE HOME EQUITY MORTGAGE TRUST, HOME EQUITY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-5; National Association, as Indenture Trustee, on Behalf of the Holders of HOME EQUITY MORTGAGE TRUST 2004-5Asset- PASS-THROUGH CERTIFICATES, illegal foreclosure sale and writ of possession piggy-backed upon Respondent(s) GMAC MORTGAGE, LLC, and GREEN TREE SERVICING, LLC having no legal standing to foreclose, collect mortgage, restructure, and or modify Petitioner(s) alleged loan.

**105).** Petitioner(s) avers that Respondent(s) ELIZABETH R. WELLBORN, P.A., has actual and constructive knowledge that Respondent(s) GMAC MORTGAGE, LLC, and GREEN TREE SERVICING, LLC, had no legal standing to foreclose on Petitioner(s) property and are not the original holder of the note or mortgage and were not HIDC prior to conducting the illegal foreclosure.

**106).** Petitioner(s) avers that Respondent(s) ELIZABETH R. WELLBORN, P.A./ GMAC MORTGAGE, LLC and GREEN TREE SERVICING, knew in advance the truth of allegations in paragraph 32, they fostered an air of conspiracy to willfully, maliciously and intentionally conspire with Respondent(s) ASHLEIGH L. PRICE, ESQUIRE/RONALD R. WOLFE & ASSOCIATES, P.L. and THE BANK OF NEW YORK MELLON AS SUCCESSOR BY MERGER TO THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., F/K/A JPMORGAN CHASE BANK, AS TRUSTEE FOR THE HOLDERS OF THE HOME EQUITY MORTGAGE TRUST, HOME EQUITY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-5; National Association, as Indenture Trustee, on Behalf of the Holders of HOME EQUITY MORTGAGE TRUST 2004-5Asset- PASS-THROUGH CERTIFICATES, to deprive the Petitioner(s) of due process, while acting under color of law to conduct an illegal foreclosure sale, dispossessory and writ of possession.

## XVII
## FOURTEENTH CAUSE OF ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICE ACT FDCPA claims against all Respondent(s)

The averments of paragraph 1 – 106 above are re-averred and incorporated herein by reference.

**107).** The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt. Petitioner(s), is a "consumer" within the meaning of FDCPA, 15 U.S.C. §1692a (3).

**108).** These Respondent(s) have engaged in collection of "debts" as this phrase is defined by 15 U.S.C. §1692a(5) and Fla. Stat. §559.55 allegedly owed by Petitioner(s)Respondent(s), GMAC MORTGAGE LLC.,/GREEN TREE, and ELIZABETH R. WELLBORN, P.A., sought to foreclose upon the subject mortgage after alleged default and are "debt collectors" . The collection activity seeks to foreclose a mortgage, collect monies owed pursuant to a promissory note including a deficiency judgment.

**109).** It is Petitioner(s) good faith belief that the Sherrell Feagins executing a verified fact, created by Respondent(s) was created through collusion between Respondent(s) GMAC and/or ELIZABETH R. WELLBORN, P.A., to support the claimed indebtedness and to support that there is "no genuine issue of material fact" in this case as of the date that the affidavit was executed.

**110).** These Respondent(s) continue to intentionally mislead the court in an effort to unjustly enrich themselves in taking Plaintiff's home when they knew, or

should have known, at the inception of this suit that GMAC and/ or its predecessor in interest has never owned the note as it was merely, at best, the servicer of mortgage.

**111).** Respondent(s) collection activities described herein violate the Florida Consumer Collection Practices Act (Fla. Stat. § 559.72) and the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692a et seq.) in that Respondent(s)' were claiming, attempting and threatening to collect and enforce this consumer mortgage debt by foreclosure action where they know or should have known that the right to pursue foreclosure does not exist under the law because:

a. GMAC MORTGAGE LLC/GREEN TREE did not have standing to pursue the 2009;

b. Failure to engage in pre-foreclosure settlement discussions with Petitioner(s);

c. Respondent(s)' unconscionable, deceptive methods and practices in collecting this loan should preclude them from seeking judicial enforcement of the alleged.

**112).** The assignment of mortgage to GMAC dated July 29, 2007, from MERS and to GREEN TREE on February 7, 2014 from GMAC after the filing of the 2013 action. However, in the 2011 AOM to BKNYM from LENDERS DIRECT CAPITAL CORPORATION alleged that it HAS the "interest of the subject note

and mortgage". As such, GMAC CORPORATION D/B/A ditech.com obtained the defaulted mortgage well after the alleged default and is considered a "debt collector" under the law. Any denial to the contrary must be supported by strict and convincing evidence. Further, merely labeling oneself as a servicer when, in fact, a large percentage of your business is collecting a debt also qualifies all Respondent(s) as "debt collectors" under the law.

**113).** Further, Petitioner(s)was subjected to "default" fees and charges including, but not limited to, attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, forced placed insurance, and other charges and authorized by or in conformity with the terms of the subject note and mortgage.

**114).** Respondent(s) GMAC MORTGAGE, LLC, and GREEN TREE SERVICING, LLC, ELIZABETH R. WELLBORN, P.A., violated the FDCPA, 15 U.S.C. §1692(f), by using unfair and unconscionable means to collect the debt owed by the Petitioner(s), including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the original Loan Agreement, note or mortgage or otherwise legally chargeable to the Petitioner(s), as more fully set forth above.

**115).** Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., violated the FDCPA, 15 U.S.C A§1692e (2), by misrepresenting their character with respect to being the original holder of note and or mortgage and HIDC status, and their legal standing to collect any amount and legal status to the Petitioner(s) debt.

**116).** Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., violated the FDCPA, 15 U.S.C. §1692e (5) and 1692f (6), by foreclosing on the Petitioner(s) home even though Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and ELIZABETH R. WELLBORN, P.A., has no legal standing to possession of the property under HIDC status, and by threatening to take other action prohibited by law.

**117).** These acts as well as the prosecution of this case are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Respondent(s) knew they should not falsify documents particularly sworn documents meant to prove a material fact such as AOIs and AOMs. These perjured documents violate 15 U.S.C. §1692410) and 15 U.S.C. §1692f.

**118).** As a result of the aforesaid FDCPA and FCCPA violations, Petitioner(s)has been subjected to false and illegal collection activities, and has

therefore been harmed due to the slander to her credit and emotional/physical health issues proximately caused by these Respondent(s). Petitioner(s)is entitled to reimbursement of her costs and fees pursuant to 15 U.S.C. §1692k(3) and Fla. Stat. §559.77.

Deutsche Bank v. Peabody, 866 N.Y.S.2d 91 (2008). EquiFirst, when making the loan, violated Regulation Z of the Federal Truth in Lending Act 15 USC §1601 and the Fair Debt Collections Practices Act 15 USC §1692; "intentionally created fraud in the factum" and withheld from plaintiff... "vital information concerning said debt and all of the matrix involved in making the loan".

**XVIII**
**FIFTEENTH CAUSE OF ACTION FOR VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559) BY RESPONDENT(S)**
**(FCCPA claims against all Respondent(s)**

**119).** Petitioner(s) alleges and incorporates the information in paragraphs 1 through 118.

**120).** Respondent(s) collection activities described herein violate the Florida Consumer Collection Practices Act (Fla. Stat. § 559.72) and the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692a et seq.) in that Respondent(s) were claiming, attempting and threatening to collect and enforce this consumer mortgage debt by foreclosure action where they know or should have known that the right to pursue foreclosure does not exist under the law because:

**121).** Petitioner(s) is a consumer within the meaning of §559.55(2).

**122).** Respondent(s) is a debt collector within the meaning of §559.55(6).

**123).** Respondent(s) violated §559.72(9) by claim, attempt, or threatening to enforce a debt when such a person knows that the debt in not legitimate or asserts the existence of some other legal right when such person knows that the right does not exist.

**XIX**
**SIXTEENTH CAUSE OF ACTION FOR DAMAGES AND DECLARATORY RELIEF PURSUANT TO 18 U.S.C. §§ 1961, 18 U.S.C. 1962(b) and 18 U.S.C. §4 1964**
**(claims against all Respondent(s)**

Petitioner(s) incorporate paragraphs, 1-123 inclusive, herein, as though set forth herein.

**124).** 0n February 1, 2013, and continuing, through the present, all Respondent(s) did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1) (A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

**125).** Petitioner(s)further alleges that Respondent(s), GMAC/GREEN TREE, BNYM, POA, MERS, WELLBORN and DOE Respondent(s) 1 through 20, entities, and on behalf of the co-Respondent(s), in conjunction with and in furtherance of the conspiracy with all the remaining Respondent(s), did commit two

(2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(h) supra.

**126).** At all times herein, Respondent(s), on their own behalf, and on behalf of the co-Respondent(s), and each of them, conspired with remaining Respondent(s), to interfere with the quiet enjoyment of Plaintiff's home; steal the equity in the Plaintiff's home through the use of sham pleadings, manufactured "evidence" such as fraudulent affidavits in a civil court action in order to fraudulently obtain a judgment of foreclosure.

**127).** Wherefore including, Petitioner(s) seeks relief as accorded by the applicable Statute, but not limited to:

**a.** Statutory Compensatory damages for each separate violation according to proof;

**c.** Exemplary damages for each separate violation based on the net worth of the Respondent(s) on their own behalf, and on behalf of the co-Respondent(s);

**d.** Declaratory relief, including permanent injunctive relief, prohibiting

these Respondent(s), or any of their agents or assigns, from any further breaches of the statute;

**e.** Reasonable fees and court costs according to proof,

**f.** Such other and further relief as the court deems just and proper.

**128).** Pursuant to §768.72 (2002), FLA. STAT,, Petitioner(s) reserves the right to amend this complaint to add a prayer for punitive damages upon a showing by evidence in the record providing a basis for recovery of such damages.

## XX
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. §2605 BY RESPONDENT(S)

Paragraphs 1 through 128 are re-alleged as though fully set forth herein.

**129).** Respondent(s) GMAC/GREEN TREE are servicers of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

**130).** Petitioner's written requests for information about his account and correction of Respondents' numerous errors were ''qualified written requests'' within the meaning of RESPA.

**131).** Respondent(s) deliberately failed to respond in a proper and timely way to Petitioner's ''qualified written requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

## XXI
## VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641 BY RESPONDENTS

**132).** Paragraphs 1 through 131 are re-alleged as though fully set forth herein.

**133).** A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(a). The identity, address, telephone number of the new creditor;

(b). The date of transfer;

(c). How to reach an agent or party having authority to act on behalf of the new creditor;

(d). The location of the place where transfer of ownership of the debt is recorded; and

(e). Any other relevant information regarding the new creditor.

## JURY TRIAL DEMAND

Petitioner(s) demands a Trial by Jury on all issues so triable. U.S. Const. Amend. VII.

## PRAYER FOR RELIEF

Wherefore, Petitioner(s) pray for judgment against the Respondent(s) and each of them, jointly and severally, as follows:

**1.** For a declaration of the rights and duties of the parties, specifically that the foreclosure of Petitioner(s) residence was wrongful.

**2.** Enjoin and issue INSTANTER, an emergency temporary restraining order, preliminary and interlocutory injunction against the Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A., illegal foreclosure proceedings and writ of possession issued in the circuit Court of Broward County;

**3.** Enjoin and issue INSTANTER an emergency temporary restraining order preliminary and interlocutory injunction against Respondent(s) GMAC

MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A.,

**4.** Enjoin and issue INSTANTER an emergency temporary restraining order, preliminary and interlocutory injunction against Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A., illegal foreclosure;

**5.** Enjoin Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A., from collecting, foreclosing or attempting to collect any mortgage payments, interest, late fees, restructuring, modifying mortgage contract in this instant case;

**6.** Award punitive or exemplary damages in an amount of $702,404.56;

**7.** Award actual and compensatory damages, including those for mental anguish, in an amount of $945,000.00;

**8.** Issue an ORDER vacating and setting aside the foreclosure sale conducted Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A.,

**9.** Declare that Respondent(s) violated the FDCPA, enjoin Respondent(s) from committing any future violations of the Act, and award the Petitioner(s) actual damages $1000.00 in statutory damages pursuant to 15 U.S.C. A§ 1692k

**10.** Declare the Respondent(s) GMAC MORTGAGE, LLC/GREEN TREE SERVICING, LLC and Respondent(s) ELIZABETH R. WELLBORN, P.A., violated UDAP, enjoin Respondent(s) from committing any future violations of the Act and award the Petitioner(s)actual damages and $1000.00 in statutory damages pursuant to State and Federal applicable statute;

**11.** To quiet title in favor of Petitioner(s) and against Respondent(s).

**12.** For compensatory, special, general and punitive damages according to proof against all Respondent(s).

**13.** That Petitioner(s)is granted a trial by jury;

**14.** Award Petitioner(s)property located at 5063 Pebblebrook Way, Broward County, Florida free from any mortgage payments encumbrances, judgments and liens, and litigation expenses, plus costs of suit, pursuant to 12 U.S.C. § 2605(f) and 15 U.S.C. § 1692k (3);

**15.** Pursuant to Florida Statue § 455.2123, that all Respondent(s), their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of in violation of Florida Statue§ 445.009, including, but not limited to, the violations alleged herein.

**16.** For civil penalties pursuant to statute, restitution, injunctive relief and reasonable fees according to proof.

**17.** For reasonable costs of suit and such other and further relief as the Court deems proper.

Plaintiff(s) reserves the right to add or amend this complaint:

Plaintiff(s) may discover there are other documents the Respondent(s) is contractually obligated and common law and statutorily required to take GOOD and VALID care of and Plaintiff(s) shall be therefore allowed to amend this COMPLAINT accordingly.

Respectfully submitted,

By:____________________
Lorna Hope Luckie

By: ____________________
Gilbert Luckie

# VERIFICATION

Personally appeared before me, the undersigned officer, duly sworn authorized and qualified to administer oaths, Lorna Luckie and Gilbert Luckie, who after being duly sworn, deposes and states on oath that the information within the foregoing COMPLAINT is true and correct to the best of her/his knowledge, information and belief.

All Rights Reserved UCC 1-308, (1-207)

By; ____________________

Lorna Hope Luckie
c/o 5063 Pebblebrook Way,
Coconut Creek, Florida
Near; [33073-9998]
Non Domestic without the US

By: ____________________

Gilbert Luckie,
c/o 5063 Pebblebrook Way,
Coconut Creek, Florida
Near; [33073-9998]
Non Domestic without the US

Sworn to and subscribed before me this 6th day of October, 2014.

____________________
NOTARY PUBLIC

ERAL L. MANNING
MY COMMISSION # EE137978
EXPIRES: October 13, 2015
1-800-3-NOTARY Fl. Notary Discount Assoc. Co.

Commission Expires: ____________________